```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
UNITED STATES OF AMERICA,               :    13 Cr. 172 (DLC)
                                        :
          -v-                           :    OPINION AND ORDER
                                        :
ENRIQUILLO ELIUD PENA PICHARDO,         :
                                        :
               Defendant.               :
                                        :
----------------------------------------X
```

APPEARANCES

For the United States of America:

Negar Tekeei, Assistant United States Attorney
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, NY, 1007


For the Defendant:

Sam A. Schmidt
111 Broadway, Suite 1305
New York, NY, 10006


DENISE COTE, District Judge:

On September 25, 2013, defendant Enriquillo Eliud Pena Pichardo ("Pichardo") filed a motion to withdraw his guilty plea to one count of aggravated identity theft in violation of 18 U.S.C. § 1028A. For the reasons explained herein, the motion is denied.

BACKGROUND

On February 19, 2009, Pichardo submitted a passport application in Manhattan in the name of "David Gascot." He provided a social security number, a birth certificate, and a New York driver's license for Gascot. David Gascot is a real person, and Pichardo is not he.

Pichardo had successfully used the Gascot identity on multiple occasions in 2008, the year before he used it to apply for a passport. First, on June 3, 2008, he applied for New York Medicaid benefits using the Gascot name, date of birth, and social security number. Second, on or about June 23, he applied for (and later received) a New York non-driver identification card using the Gascot name, date of birth, and social security number. Third, on July 25, because the first New York Medicaid application was rejected for reasons unknown, he reapplied using the Gascot name, date of birth, and social security number. He was successful and began receiving benefits by October. Fourth, on July 30, Pichardo was arrested on a New York drug charge, and he provided the Gascot name, date of birth, and social security number in connection with that arrest. Fifth, on December 3, Pichardo obtained a New York State driver's license using the Gascot name and date of birth.

On March 4, 2013, Pichardo was charged by federal complaint with two crimes. The first was making a false statement in

applying for a passport with the intent to secure a passport, in violation of 18 U.S.C. § 1542 ("passport fraud"). The second was knowingly using the personal identification information of another person in connection with the first crime, in violation of 18 U.S.C. § 1028A ("aggravated identity theft"). Pichardo was arrested on March 5, at which point the Federal Defenders Office was assigned to represent him. A grand jury indicted Pichardo on March 13. Count One in the indictment is passport fraud, and Count Two is aggravated identity theft. Ronald Thau, of the Federal Defenders, filed a notice of appearance on behalf of Pichardo on March 19, and at a conference on that same date a trial date was set for June 17.

Through a <u>Pimentel</u> letter of May 8, the Government advised the defendant of its calculations of his sentencing guidelines. Among other things, it calculated the criminal history category as V due to the defendant's accumulation of 11 criminal history points stemming from three prior convictions and one parole violation. The Government calculated the guidelines range for Count One as nine to fifteen months' imprisonment, and because Count Two carried a mandatory consecutive term of imprisonment of two years, the total guidelines range as thirty-three to thirty-nine months' imprisonment. The defendant admitted during his plea allocution that he read the letter and discussed it with his attorney.

On May 22, the defendant pled guilty to both counts. The Court conducted a full Rule 11 plea colloquy, establishing that the defendant's plea was knowing and voluntary. The defendant was provided with a Spanish interpreter, even though Mr. Thau advised that the defendant was fluent in English. It was determined that the defendant was not under the influence of drugs, medicine, or pills. He was advised of the constitutional rights that he was waiving in pleading guilty. He was advised of the charges against him, and the penalties that applied to those charges. Among other things, he was advised of the mandatory two-year term of imprisonment for Count Two that would follow any term of imprisonment imposed on Count One. It was determined that an adequate factual basis existed for guilt on both charges. Further details of that colloquy, including the allocution, are discussed below. The defendant stated that he was satisfied with Mr. Thau's representation, and Mr. Thau affirmed that the defendant had provided a sufficient factual predicate for a plea of guilty to both counts. Mr. Thau further asserted that he knew of no reason that the Court should not accept the plea. The plea was accepted, a judgment of guilt was entered on both counts, and sentencing was scheduled for August 23.

Instead of filing a written sentencing submission on August 9, the date on which it was due, Mr. Thau submitted a letter

requesting to be relieved as counsel due to the defendant's "asserted grounds on ineffective assistance of counsel" for (1) failing to move for dismissal of the aggravated identity theft count under Flores-Figueroa v. United States, 129 S. Ct. 1886, 1894 (2009), and (2) advising the defendant to plead guilty to the count, despite Flores-Figueroa. On August 14, new counsel was appointed.

On September 25, the defendant moved to withdraw his guilty plea to aggravated identity theft. As set forth in the affidavit accompanying the motion, the defendant alleges that he purchased a birth certificate and social security card in the name of David Gascot sometime in 2008 for approximately $1,000. The seller was Dominican but told the defendant that he had "friends in Puerto Rico." The defendant admits that the "documents looked unaltered." For another $1,000, another person took the defendant to the New York Department of Motor Vehicles, where his photograph was taken and he was given a New York driver's license in the name of David Gascot.

The defendant denies that anyone ever told him prior to his arrest that the name on the birth certificate or social security card was the name of a real person. He also asserts that he did not "know" that the documents were for a "real person" when he used them, but that his attorney told him that they were documents "of a real person" following his arrest.

The defendant represents that he told his attorney "all of the relevant information about the case," and that his attorney advised him that he had "no defense to the charges and explained the sentencing Guidelines and the mandatory penalty" to him. Given the defendant's criminal record, the Government refused to accept a plea to Count One alone, and Mr. Thau advised the defendant that he had no choice but to plead guilty to both counts in order to "get points off for acceptance of responsibility." Following his plea of guilty, the defendant learned from a fellow inmate that to be guilty of the crime of aggravated identity theft, he had to have known that he was using a real person's identification documents.

DISCUSSION

The defendant presents three arguments in support of his motion to withdraw his guilty plea: (1) that he has met the requirements of a "fair and just reason" for withdrawal under Fed. R. Crim. P. 11(d)(2)(B); (2) that his plea was involuntary and thus invalid; and (3) that his plea was the product of ineffective assistance of counsel. Because the second and third arguments are closely related as the defendant has argued them, they are grouped for present discussion.

Each of these grounds rests on the Supreme Court's holding in Flores-Figueroa v. United States, 129 S. Ct. 1886 (2009),

6

which interpreted the language of the aggravated identity theft statute at issue here.  Under the statute, a mandatory consecutive two-year prison term is imposed upon an individual who, during the commission of certain other crimes, "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person."  18 U.S.C. § 1028A(a)(1).  In Flores-Figueroa, the defendant had submitted a counterfeit social security card and alien registration card to his employer; these cards used the defendant's real name, but the numbers on both cards were assigned to other people.  The Government charged the defendant with aggravated identity theft under 18 U.S.C. § 1028A(a)(1), and the defendant moved for acquittal on the basis that the Government could not prove that he knew that the numbers on the counterfeit documents were assigned to other people.  The Government responded that it was not required to do so because, as it contended, the term "knowingly" did not extend to the statute's last three words, "of another person."

    The Supreme Court rejected the Government's position and held that "§ 1028A(a)(1) requires the Government to show that the defendant knew that the means of identification at issue belonged to another person." Flores-Figueroa, 129 S. Ct. at 1894.  Of relevance here, the Court based its holding in large part on its assessment, under basic principles of grammar and

7

common usage, that a person would "ordinarily" or "typically" read the statute and understand the term "knowingly" to extend to the words "of another person." Id. at 1891. Additionally, in responding to the Government's argument that it would prove difficult in many instances to prove that a defendant has the requisite knowledge, the Court acknowledged the argument's "practical importance" but ultimately concluded that, in the classic cases of identity theft, "intent is generally not difficult to prove." Id. at 1893.

1. "Fair and Just Reason"

Pursuant to Rule 11(d)(2)(B), Fed. R. Crim. P., a defendant may withdraw his plea of guilt prior to the entry of a sentence if he can show "a fair and just reason" for the withdrawal. In considering such a request, a court generally considers

> (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion . . . ; and (3) whether the government would be prejudiced by a withdrawal of the plea.

United States v. Gonzalez, 647 F.3d 41, 56 (2d Cir. 2011) (citation omitted). "The defendant has the burden of demonstrating valid grounds for withdrawal." Id. "There is no burden on the government to show that it would be prejudiced by the withdrawal of the guilty plea unless the defendant has shown

8

sufficient grounds to justify withdrawal." Id. "[N]o hearing need be granted when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory." Id. at 57 (citation omitted). "[G]iven the strong societal interest in the finality of guilty pleas, a defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw his guilty plea." Id. at 56 (citation omitted).

The defendant contends that he is legally innocent of the aggravated identity theft crime because he did not "know" that the personal identification documents he used to acquire a passport belonged to a real person. This contention, however, is both contradicted by the plea colloquy and incredible in light of the uncontested facts.

The defendant admitted at the plea colloquy to knowing at the time of the crime that the documents he used belonged to another person. Specifically, during the allocution, wherein the defendant stated in his own words why he was guilty of the crimes to which he was pleading guilty, he repeatedly assented to using the personal identification information of <u>another person</u>.

> Court:       And what was false with respect to the [passport] application?
> Defendant:   That it wasn't with my name.

> Court:       And I take it you used the name of <u>another person</u> in making the application for the passport?
> Defendant:   Yes.
> Court:       And was that name included on any identification for <u>another person</u> such as a driver's license?
> Defendant:   Could you repeat, please?
> Court:       Yes. Was the false information -- I'm sorry. Was the <u>other person</u>'s name on a piece of identification?
> Defendant:   Yes.
> Court:       What piece of identification?
> Defendant:   A driver's license.
> Court:       Thank you.

The defendant then added the following:

> Defendant:   And I also used the birth certificate.
> Court:       So you used the birth certificate <u>in someone else's name</u> in making that passport application?
> Defendant:   Yes, your Honor.
> Court:       And you <u>knew at the time then</u> that you were providing, in essence, false information to the government in order to obtain a U.S. passport?
> Defendant:   Yes.

Tellingly, the defendant does not dispute that he believed at the time that he used the false identification to obtain a passport that the identification documents contained the name of a real person. After all, all of his activities before that date were premised on that belief. The defendant paid a significant quantity of money for the Gascot identity -- $1,000 for a birth certificate and social security card that looked real to him. The seller conveyed those documents to Gascot with the assurance that he had friends in Puerto Rico, further

10

cementing that the documents were genuine identity documents belonging to a real American citizen.

Moreover, the defendant's repeated and successful use of Gascot's personal identification information on five separate instances in 2008 underscores his reliance on and confidence in the use of the Gascot identity as the identity of a real person. Pichardo had such confidence in the legitimacy of the documents that he paid another $1,000 to obtain a driver's license in the name of Gascot. This is a significant investment for anyone, particularly for a person of modest means like Pichardo, unless he believed that the identity -- including the name and the social security number -- was genuine and of a real person.

While defendant states in his affidavit that he did not "know" that the Gascot identity belonged to a real person, this assertion is linked to his assertion that no one had "told" him that the birth certificate and social security card were "of a real person." This argument fails because it suggests that a particular statement must be made at the time identity documents are sold in order for a defendant to possess the requisite mental state to be convicted of the crime of aggravated identity theft -- a suggestion that is contrary to basic principles of mens rea in criminal law. For example, under the conscious avoidance doctrine, "[w]hen knowledge of the existence of a particular fact is an element of an offense, such knowledge is

11

established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist." Model Penal Code § 2.02(7) (1962).[1]  Here, based on the undisputed facts, the defendant was not only aware of at least a high probability that the Gascot identity belonged to a real person, he also believed that the Gascot identity belonged to a real person and acted on that belief.  Indeed, being able to rely on such evidence to infer knowledge is presumably why the Supreme Court stated in Flores-Figueroa that intent "is generally not difficult to prove."  129 S. Ct. at 1893.

Finally, the defendant cites United States v. Tureseo, 566 F.3d 77, 86 (2d Cir. 2009), in which the Second Circuit vacated a jury conviction on the charge of aggravated identity theft where, despite much evidence that the defendant should have known that the stolen identity belonged to a real person, there was at least some evidence going the other way.  So, the defendant argues, the same should apply here, and he should be entitled to withdraw his plea.

Tureseo, however, can be readily distinguished.  Tureseo concerned a jury conviction for aggravated identity theft based on a charge that was given before the Supreme Court decided

---

[1] This formulation was approved by the Supreme Court in Leary v. United States, 395 U.S. 6, 46 n.93 (1969) and adopted by the Second Circuit.  See, e.g., United States v. Feroz, 848 F.2d 359, 360 (2d Cir. 1988) (per curiam).

Flores-Figueroa. The Supreme Court's decision rendered the charge clearly erroneous. The question before the Second Circuit was whether, given the erroneous charge, a new jury trial was required, or whether the error could be deemed harmless because Tureseo was nevertheless guilty of aggravated identity theft beyond a reasonable doubt. The Circuit held that the error could not be deemed harmless and remanded the case for a new jury trial. The Second Circuit did not conclude that Tureseo was innocent, only that it could not make the determination of guilt or innocence because resolving the disputed evidence regarding Tureseo's innocence required making a credibility determination, which must be made by a jury that had been given an accurate description of the legal standard. Tureseo, 566 F.3d at 86.

This case presents an altogether different posture. Here, Pichardo entered a plea of guilty through an allocution in which he repeatedly represented that he used another person's identity. The defendant has therefore failed to meet his burden to present a "fair and just reason" for withdrawing his plea under Fed. R. Crim. P. 11(d)(2)(B).

## 2. Involuntariness/Ineffective Assistance of Counsel

The defendant also seeks to withdraw his plea of guilty on the basis that his plea was involuntary. "Where a motion to withdraw a plea is premised on involuntariness, the defendant must raise a significant question about the voluntariness of the original plea." United States v. Doe, 537 F.3d 204, 211 (2d Cir. 2008) (citation omitted).

The defendant first argues that his plea was involuntary because he was not properly apprised of the elements of the aggravated identity theft charge. This argument is flatly belied by the plea colloquy, during which the Court described the entirety of the relevant language in 18 U.S.C. § 1028A(a)(1), including the "knowingly" term:

> Court: Let me describe the second charge against you. It applies to the same date and place.
> It charges that you willingly and knowingly, transferred, possessed, or used, without lawful authority, a means of identification of another person, and that is the person[al] information of another person such as their name, date of birth, their Social Security number, in connection with the passport fraud I've just described as charged in Count One.
> Do you understand that is the charge against you on Count Two?
> Defendant: Yes.

The defendant suggests that merely reciting the language of the statute was insufficient to apprise him of the crime because, as demonstrated by the fact that the Supreme Court

14

issued a decision on the issue, the scope of the term "knowingly" is unclear. This argument fails. In any event, the colloquy that followed to lay the factual predicate for the plea included defendant's repeated admission that he used another person's identity in making a passport application and knew at that time that he was doing so that he was providing false information. See United States v. Torrellas, 455 F.3d 96, 103 (2d Cir. 2006).

The defendant's second argument is that of ineffective assistance of counsel. Pichardo's current attorney represents that Mr. Thau "confirmed that the statutory requirement for Mr. Pichardo to have knowledge that the means of identification of a real person when he used it was never discussed with him."

"Ineffective assistance of counsel may render a guilty plea involuntary, and hence invalid." United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002)(citation omitted), abrogated on other grounds in Padilla v. Kentucky, 559 U.S. 356 (2010). To prove ineffective assistance of counsel, petitioner must show that: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) he was prejudiced by counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687-96 (1984). The defendant argues that Mr. Thau provided constitutionally ineffective counsel by failing to advise him that, under Flores-

15

Figueroa, the Government must show that he knew the Gascot identity belonged to a real person at the time of the crime. The defendant asserts that, had Mr. Thau properly advised him, he would not have pled guilty to the aggravated identity theft charge.

The defendant's allegation that his attorney did not provide him with adequate advice and counsel is insufficient to meet the high bar of constitutionally ineffective performance. In assessing counsel's performance, a court

> must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that [t]here are countless ways to provide effective assistance in any given case and that [e]ven the best criminal defense attorneys would not defend a particular client in the same way.

United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (citation omitted).

The representation about Mr. Thau's advice to Pichardo is carefully and narrowly drawn. It does not state that Mr. Thau was unaware of the statutory requirement that Pichardo know he was using the means of identification of a real person at the time of the crime, or that Mr. Thau failed to inquire of Pichardo with sufficient care to learn what Pichardo understood at the time of the crime. There is no requirement that an attorney provide a defendant with an exegesis of the law

16

including pertinent Supreme Court precedents before advising a defendant to plead.

Mr. Thau is an experienced defense attorney who has served with the Federal Defender Office for decades. He assured the Court at the time of the plea that he believed there was a sufficient factual predicate for a guilty plea and that he knew of no reason why the Court should not accept the plea. The defendant's allegations of ineffective assistance of counsel are therefore insufficient. Accordingly, Pichardo has raised no substantial question that his guilty plea was involuntary on the basis of the alleged ineffectiveness.

CONCLUSION

The defendant's motion of September 25, 2013 is denied.

Dated: New York, New York
       November 13, 2013

                                     *Denise Cote*
                                     DENISE COTE
                          United States District Judge